UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 09-81-GWU


ETHELYN ANGULO,                                              PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?
    If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful
    activity, does he have any "severe" impairment or combination
    of impairments--i.e., any impairments significantly limiting his
    physical or mental ability to do basic work activities?  If not, a
    finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine
    whether the claimant's severe impairment(s) or combination of
    impairments meets or equals in severity an impairment listed
    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

09-81 Ethelyn Angulo

Impairments).  If so, disability is conclusively presumed and
benefits are awarded.

4.      At the fourth step the Commissioner must determine whether
        the claimant retains the residual functional capacity to perform
        the physical and mental demands of his past relevant work.  If
        so, the claimant is not disabled and the claim is denied.  If the
        plaintiff carries this burden, a prima facie case of disability is
        established.

5.      If the plaintiff has carried his burden of proof through the first
        four steps, at the fifth step the burden shifts to the
        Commissioner to show that the claimant can perform any other
        substantial gainful activity which exists in the national
        economy, considering his residual functional capacity, age,
        education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

        Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

        One of the issues with the administrative decision may be the fact that the

Commissioner has improperly failed to accord greater weight to a treating physician

2

09-81 Ethelyn Angulo

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

09-81 Ethelyn Angulo

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to

09-81 Ethelyn Angulo

make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

09-81 Ethelyn Angulo

a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

09-81 Ethelyn Angulo

accurately portrays the plaintiff's physical and mental impairments.   Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Ethelyn Angulo, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of morbid obesity, chronic lumbosacral spine strain with chronic low back pain, chronic cervical strain, asthma, depression, anxiety, and a pain disorder.  (Tr. 10).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Angulo retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-19).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a younger individual with a high school education and work experience as a cashier/ assistant manager, could perform any jobs if she were limited to "light" level exertion and also had the following additional non-exertional restrictions.[1]  She: (1) could not climb ladders, ropes, or scaffolds or crawl; (2) could occasionally balance, twist, bend, stoop, kneel, crouch, and climb ramps and stairs; (3) could no more than

---

[1]The plaintiff stated in her Disability Report that she was a high school graduate and did not attend Special Education classes (Tr. 132), but informed a psychological examiner that she did have Special Education (Tr. 246) and referred to having a "delayed learning disability" in her oral testimony (Tr. 29).

7

frequently push or pull or use foot controls with the lower extremities; (4) could occasionally work with her hands overhead; (5) needed to avoid concentrated whole body vibration, exposure to fumes, odors, dusts, gases, unprotected heights, or activities around industrial hazards or dangerous machinery; (6) could understand, remember, and carry out simple repetitive work instructions, maintain attention and concentration in extended two-hour segments in an eight-hour day, adequately relate to coworkers and supervisors in an object-focused work environment in which there was limited interaction with the general public, and adapt to routine changes in a routine work environment.  (Tr. 59).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Angulo alleged disability beginning May 1, 2005 due to back problems, carpel tunnel syndrome, high blood pressure, and asthma.  (Tr. 127).  She testified that she resided with three of her four teenage children but due to severe back pain and hand problems, as well as a feeling of paralysis on her left side, and shortness of breath, she was unable to do more than a minimal amount of housekeeping.  (Tr. 26, 32-3, 38, 45).  Her shortness of breath was so severe that she could hardly walk

09-81 Ethelyn Angulo

for more than two or three minutes without stopping for breath.  (Tr. 37).  However, she smoked up to a pack of cigarettes per day.  (Tr. 42).  She admitted that being overweight contributed to her back pain.  (Tr. 55).  She saw a chiropractor three times a month because she could not get a medical card.  (Tr. 34).  Psychologically, she described being panicky around other people, but had not recently sought treatment.  (Tr. 42, 52).  Despite equivocal testimony regarding her education, Mrs. Angulo testified that she had a hobby of writing poetry and had completed a full book every week before her carpel tunnel problem had developed.  (Tr. 53).  She enjoyed learning other languages, and described herself as being trilingual, with the other languages besides English being Spanish and sign language.  She was also currently trying to learn German from audiotapes and books.  (Tr. 50).

Mrs. Angulo did not have a treating physician.  In addition to emergency room records, which reflect various complaints including hand and arm numbness and back pain, with diagnoses of carpel tunnel syndrome and a low back strain (e.g., Tr. 167-96, 232), most of the medical evidence consists of one-time examinations.

Dr. Jon J. Sanchez, an orthopedist, examined the plaintiff on November 8, 2005 on referral from a hospital emergency room for evaluation of low back pain radiating into the right leg and neck pain extending into the arms and causing hand numbness.  (Tr. 224).  The physician found tenderness and pain on range of motion of the cervical spine with a decreased sensation across all fingers and a "peculiar

9

09-81 Ethelyn Angulo

rhythmic tremor" on testing for Tinel's sign.  (Tr. 224).  Her entire thoracic and lumbar spine areas were tender, with a fair range of motion on straight leg raising, with reflexes being brisk on the right side and minimal on the left side.  (Tr. 225). She appeared to have global weakness affecting muscle group testing.  X-rays of the right knee showed only mild degenerative changes.  Dr. Sanchez listed an impression of chronic pain involving multiple areas which was "probably multifactorial."  (Id.).  Dr. Sanchez described her as presenting a diagnostic challenge and recommended a neurosurgical evaluation with additional testing. (Id.).  This testing was not obtained, however.

Dr. James C. Owen conducted a consultative examination on August 30, 2006.  In addition to carpel tunnel syndrome and left-sided pain, Mrs. Angulo described shortness of breath and high blood pressure as well as left flank pain and numbness.  (Tr. 234).  Dr. Owen felt that she gave a poor medical history, and appeared to be "suffering" as well as "crying in the office."  (Tr. 235).  He felt that she was "somewhat slow" and probably had mild mental retardation.  (Id.).  Her weight was 263 pounds, and she admitted to smoking two packs of cigarettes per day for 24 years.  (Id.).  There was a substantially reduced range of motion in the shoulders and neck, mildly diminished strength particularly in the lower extremities, and abnormal reflexes on the right.  (Tr. 236).  Pulmonary function testing showed an FEV1 88 percent of normal.  Dr. Owen felt that her reflex abnormalities raised

the possibility of "some kind of motor neuron lesion" and recommended a referral to a neurologist as soon as possible.  He also felt that, while carpel tunnel syndrome was a possibility, multiple sclerosis was also.  In terms of functional restrictions, he opined that the plaintiff would have severe difficulty in lifting and carrying objects, but her ability to hear, see, speak, and travel were unaffected.

State agency physicians Allen Dawson and David Swan reviewed the evidence and concluded that the plaintiff could perform "light" level exertion with occasional climbing of ladders, ropes, and scaffolds, limited reaching overhead, and a need to avoid even moderate exposure to vibration and pulmonary irritants.  (Tr. 268-74, 311-17).  Dr. Dawson commented that her body mass index of 40.3 would be expected to aggravate pain from weight-bearing joints such as the back, but no imaging studies were available.  (Tr. 268).  He discussed Dr. Owen's findings, but did not comment on the physician's statement that a neurological examination was needed.  (Tr. 269).

The plaintiff's treating chiropractor submitted office notes and opined that as of December of 2006 he felt that none of her health concerns would cause total disability, although hard physical labor would not be advisable.  (Tr. 289).  By April of 2008, however, this source limited the plaintiff to no walking and no more than one hour of sitting and standing in an eight-hour day, in addition to having other limitations.  (Tr. 365).

09-81 Ethelyn Angulo

The ALJ stated that he gave great weight to the assessments of the state agency reviewing sources. (Tr. 17). He felt that the plaintiff's testimony regarding her limitations was not consistent with her apparent ability to drive and attend examinations, and she was able to sit for much longer during the hearing than she had testified that she was able to do. The plaintiff argues on appeal that the ALJ improperly ignored the opinion of the chiropractor, but the ALJ properly noted that while Social Security Ruling (SSR) 06-03p allowed controlling weight to be given to opinions from sources such as chiropractors who are not considered "acceptable medical sources" under the regulations, the limitations listed by the chiropractor were not consistent with Mrs. Angulo's activities of daily living.[2] Substantial evidence supports the ALJ's decision not to follow the opinion of the chiropractor. The only actual limitations listed by an acceptable medical source other than the state agency reviewers was Dr. Owen's indication that Mrs. Angulo would have severe difficulty lifting and carrying objects, which is not facially inconsistent with the restrictions the ALJ ultimately imposed.

Turning to the plaintiff's mental status, she was referred for a psychological examination by Dr. Harwell F. Smith in September, 2006. (Tr. 244). When asked why she was applying for disability, the plaintiff described physical problems initially,

---

[2]The ALJ also stated that he would not order a neurological consultative evaluation, although the plaintiff was free to present one. Ultimately, it is the plaintiff's responsibility to prove her own case.

09-81 Ethelyn Angulo

and subsequently appeared to indicate that her only psychological problem was tedium because she could not work and even television had become boring. (Id.). She somewhat vaguely reported a history of having a chemical imbalance when she was younger, described sexual and physical abuse in the past, and stated that she had been committed to a psychiatric unit when she was pregnant with her first child, without good reason. (Tr. 244-7). Dr. Smith described Mrs. Angulo as appearing anxious and emotionally fragile. (Tr. 244). Her reading was at a sixth grade level but she could generate and write a sentence except for having difficulty due to hand pain. (Tr. 245). She was able to do simple addition and subtraction but not multiplication and division. (Id.). He felt that she appeared to have at best low average verbal intellectual functioning and "likely" borderline intellectual functioning, in addition to anxiety that was severe enough to be interfering with her ability to think and concentrate. (Id.). However, she asserted that her back is what kept her from working. (Tr. 247). Dr. Smith diagnosed a pain disorder (associated with a medical condition and psychological factors), major depression, generalized anxiety disorder, a learning disability, and "rule out" (rather than "likely") borderline intellectual functioning. (Tr. 247-5). He assigned a Global Assessment of Functioning (GAF) score of 45. (Tr. 248). A GAF score of 45 is consistent with serious symptoms or any serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text

13

Revision) (DSM-IV-TR), p. 34.  The psychologist felt that she would have a "poor" ability to interact socially, tolerate stress, show sustained concentration and persistence on task, interact socially with people at work, and adapt or respond to the pressures of a day-to-day work setting.  (Id.).

State agency psychologists Jane Brake and Lea Perritt reviewed Dr. Owen's report but stated that it would be given no weight because the mental problems described appeared to be linked to the plaintiff's physical and pain conditions.  (Tr. 251).  They noted that she made no mental allegations in her initial application, and determined that she would be moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration, work in coordination with or proximity to others without being distracted, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting.  (Tr. 249-50).  The psychological limitations given in the hypothetical question are substantively equivalent.

The plaintiff notes that Dr. Smith also provided the low GAF score of 45, and that the VE testified that a valid GAF score below 50 would preclude work activities.  (Tr. 61-2).  The ALJ considered the GAF score, but concluded that the plaintiff's daily activities were inconsistent with the suicidal ideation, lack of friends, and inability to keep a job, implied by the DSM-IV-TR.  (Tr. 12).  He noted elsewhere

that Mrs. Angulo had a friend whom she saw daily and would shop, to the extent allowed by her physical complaints, at a dollar store and supermarket, and that she functioned well in "chiropractor's and lawyer's offices, and in Social Security courtrooms," and was able to help her children with homework and attend PTA meetings.  (Tr. 13-14).  Thus, the GAF score was hardly ignored by the ALJ, who provided several good reasons for declining to accept it.  While the outcome might be different if Dr. Smith had been a treating source, see Martin v. Commissioner of Social Security, 61 Fed. Appx. 191, 2003 WL 1870731 (6th Cir. 2003) ("In the absence of a medical opinion refuting or discrediting the treating physician, whose opinions are supported by other medical reports of record, the ALJ's own view of the GAF scores and Plaintiff's activity log do not constitute substantial evidence to overcome the deference owed to the conclusion of [the treating physician]"), Dr. Smith was a one-time examiner whose opinion was not entitled to the deference due to that of a treating physician.[3]  As previously noted, the state agency reviewers, who are considered experts in their field, see 20 C.F.R. § 416.927(f)(2)(i), believed that Dr. Smith's conclusions had commingled mental issues with physical issues outside his area of expertise.  A reasonable finder of fact could have

---

[3]Even the opinion of a treating source need not be given complete deference where it is contradicted by the plaintiff's testimony.  Warner v. Commissioner of Social Security, 375 F.3d 387, 391 (6th Cir. 2004).

09-81 Ethelyn Angulo

concluded that the GAF score was not binding considering all of these circumstances.

The plaintiff's argument that the ALJ should have presented a hypothetical question based on a combination of the opinions of the two consultants and the chiropractor is without merit, since the ALJ provided good reasons for not accepting all or part of their individual opinions.

The court concludes that substantial evidence supports the administrative decision, which will be affirmed.

This the 19th day of November, 2009.

Signed By:

__G. Wix Unthank__

United States Senior Judge

16